UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK DIETERLE,<br>　　　　Plaintiff,<br><br>v.<br><br>RITE AID PHARMACY a/k/a BROOKS<br>PHARMACY a/k/a MAXI DRUG, INC. and<br>RITE AID OF CONNECTICUT, INC.<br>　　　　Defendants. | :<br>:<br>:<br>:　CIVIL ACTION NO.<br>:　3:14-CV-00849-VLB<br>:<br>:<br>:<br>:<br>:　March 31, 2015 |

### MEMORANDUM OF DECISION REMANDING THE COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION

The Plaintiff, Mark Dieterle ("Dieterle"), brings this action against several defendants (collectively the "Drug Store Defendants"), including Rite Aid Pharmacy ("Rite Aid Pharmacy"), Rite Aid of Connecticut, Inc. ("Rite Aid CT"), Brooks Pharmacy ("Brooks"), and Maxi Drug, Inc. ("Maxi"), for discrimination and retaliation in violation of the Connecticut Fair Employment Practices Act ("CFEPA"). The complaint defines all of the Defendants singularly as Rite Aid. [Dkt. #1 Compl. at ¶ 3]. All of the allegations of the Complaint are asserted against Rite Aid or the Defendant, without attribution to any particular defendant. [*Id.* at ¶¶ 4, 5, 6, 8, 12 13, 16, 17, 18. 19, 21, 24, 25, 26, 27. 2829, 30, 31, 32, 34, 35, 36, 37]. Pending before the Court are the parties' dueling joinder motions. Some of the Drug Store Defendants assert that they were improperly joined and seek to be removed from this action pursuant to Fed. R. Civ. P. 21. *See* [Dkt. #17]. Meanwhile, Plaintiff seeks to add another defendant to this matter, pursuant to Fed. R. Civ. P. 19, Rite Aid Corporation ("Rite Aid Corp."). However, in reviewing the parties' submissions on each of these motions and the Removal Notice

1

submitted by the Drug Store Defendants, *see* [Dkt. #1], the Court has determined that it lacks subject-matter jurisdiction and remands this matter back to the Connecticut Superior Court.

Dieterle, a homosexual male, was the manager of Defendant Maxi from October 2006 through July 26, 2012. [*Id.*, Compl. at ¶¶ 2, 8]. Maxi was located in Putnam, Connecticut, where Dieterle resides. [*Id.* at ¶¶ 1, 3]. Sometime in 2010, an assistant manager and co-worker, Sean Walsh ("Walsh"), a heterosexual male, doctored a photograph of Dieterle, which made it appear that Dieterle was wearing a dress. [*Id.* at ¶ 20]. Walsh proceeded to publicly post the image within the Maxi store. [*Id.*]. Dieterle understood the image to be "a clear message of ridicule and derision relating to [his] homosexuality." [*Id.* at ¶ 21]. Upon observing the image, Dieterle made a formal verbal complaint to James Paquin. [*Id.* at ¶ 22]. Paquin was the District Manager for Rite Aid and Dieterle's direct supervisor. [*Id.* at ¶ 5]. According to the Complaint, Paquin was an "agent, representative and/or employee of Rite Aid." [*Id.*]. Upon hearing Dieterle's formal complaint, Paquin discouraged him from pursuing the complaint further, and he did not conduct any investigation, nor did he discipline the offending employee, Walsh. [*Id.* at ¶¶ 23-25].

On July 18, 2012, while working at the store, Dieterle engaged in certain horse-play with a co-worker. [*Id.* at ¶ 14]. The co-worker submitted a complaint regarding the incident. [*Id.* at ¶ 16]. Following the complaint, an investigation ensued, which included speaking with all parties involved and reviewing any past misconduct and/or violations of company policy on the part of Dieterle. [*Id.* at ¶

2

17]. At the conclusion of the investigation, "Rite Aid determined that the Plaintiff's horse-play violated company policy and terminated his employment." [*Id*. at ¶ 18]. The reasons Dieterle was given for his termination were that he had violated the workplace harassment policy and that this policy forbidding work harassment of any kind was a "zero tolerance" policy. [*Id*. at ¶¶ 12-13]. In light of the earlier incident with the photo-shopped images, which Dieterle reported to Paquin but which did not result in any investigation or disciplining of the offending employee, Dieterle contends he was treated differently on the basis of his sexual orientation, and was improperly terminated. [*Id*. at ¶ 19].

On April 29, 2014, Dieterle filed his complaint in Connecticut Superior Court. See [*id*. at 1]. On June 11, 2014, the Drug Store Defendants removed this action to federal court. Their Removal Notice stated that the jurisdictional basis for removal was diversity between the parties. [Dkt. #1, Notice of Removal, at ¶ 2]. However, the Notice acknowledged that, "[b]efore, at, and after the time that [Dieterle] commenced his state court action, Defendant [Rite Aid CT] was and is incorporated in the State of Connecticut." [*Id*. at ¶ 5]. Despite the lack of diversity between the parties, the Drug Store Defendants claim that this case was properly removed because Rite Aid CT "is not a party in interest properly joined." [*Id*. at ¶ 6 (quotation and citation omitted)]. In support of their position, they assert that "the claims arise out of Plaintiff's employment with a *single* defendant. Plaintiff has not alleged any facts to support a claim against Defendant Rite Aid of CT – a completely separate entity that did not employ him." [*Id*. at ¶ 9]. However, the Drug Store Defendants acknowledge that at some points, "the Complaint

identifies at least two Defendants." [*Id.* at ¶ 7]. In further support of their claim that removal is proper, the Defendants submitted a sworn affidavit. See [Dkt. #1, Ex. C, Tracy Aff.]. The affidavit states that both Maxi and Rite Aid CT are wholly owned subsidiaries of Rite Aid Corporation. [*Id.* at ¶¶ 4, 7]. It also states that Maxi "is not owned, operated or maintained by Defendant Rite Aid [CT]." [*Id.* at ¶ 9].

On July 8, 2014, the Drug Store Defendants filed a Motion for Misjoinder of Parties. *See* [Dkt. #17]. This motion reiterated the same arguments contained in the Removal Notice, namely, that Dieterle was never employed by Rite Aid CT and that the Complaint fails to assert any right to relief against Rite Aid CT that either arises out of the same transaction or occurrence or otherwise presents some common question of law or fact. [Dkt. #17-1 at 2-3].

## LEGAL STANDARD

The removal statute, 28 U.S.C. § 1441, governs the types of actions that defendants may remove from state to federal court. Diversity of citizenship is one ground on which a defendant may properly remove a case. However, "[a] civil action otherwise removable solely on the basis of [diversity] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). A party that is seeking to remove a plaintiff's suit to federal court bears "the burden of establishing that the requirements for diversity jurisdiction were met." *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 296 (2d Cir. 2000). Lack of removal jurisdiction may be raised by a court *sua sponte,* and upon

determination that the court lacks subject matter jurisdiction, a remand is mandatory. *Perez v. Metro. Property & Cas. Ins. Co.*, No. 3:14-cv-01565 (CSH), 2014 WL 7428280, at *2 (D. Conn. Dec. 31, 2014).

There is no dispute in the present case that if Defendant Rite Aid CT is a proper party to this case, then as a citizen of Connecticut, its presence, coupled with that of the Plaintiff, also a Connecticut citizen, would destroy diversity of citizenship, and thereby would deprive this Court of diversity subject matter jurisdiction under 28 U.S.C. § 1332. However, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460–61 (2d Cir.1998). Under the doctrine of fraudulent joinder, "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 302 (2d Cir.2004). "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia,* 138 F.3d at 461. Put another way, "[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 207 (2d Cir. 2001).

5

"The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia,* 138 F.3d at 461. Moreover, "because this is a jurisdictional inquiry, a court can look beyond the face of the complaint in assessing whether there is any possibility of recovery." *Retirement Program For Employees of the Town Fairfield v. NEPC,* 642 F.Supp. 2d 92, 96 (D. Conn. 2009).

The Defendants here do not allege any outright fraud by the Plaintiff. Therefore, the Court turns to the issue of whether it is possible, based on the pleadings, that the Plaintiff has a claim against Defendant Rite Aid CT. This standard has been strictly applied by courts in this Circuit. *See Stan Winston v. Toys "R" Us, Inc.,* 314 F. Supp. 2d, 177, 183 (S.D.N.Y. 2003) (concluding that defendants had not shown that it was "legally impossible" for non-diverse defendant to be liable under state law); *Nemazee v. Premier, Inc.,* 232 F.Supp.2d 172, 178 (S.D.N.Y.2002) (noting that fraudulent joinder "turns on whether recovery is per se precluded"; "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder").

### ANALYSIS

#### a. It is Not Legally Impossible for Rite Aid CT to be Held Liable for Dieterle's Discrimination Claims Under the CFEPA

To support their claim of fraudulent joinder, Defendants rely on two arguments: (1) Dieterle was not an employee of Defendant Rite Aid CT and (2) his complaint fails to assert a claim against this defendant. These arguments both fail.

6

Dieterle brings discrimination and retaliation claims based on his sexual orientation under the CFEPA.  Such claims are "analyzed under the same model of analysis used in federal Title VII claims."  *Roman v. Velleca*, No. 3:11-cv-1867 (VLB), 2012 WL 4445475, at *7 (D. Conn. Sept. 25, 2012) (citing *Jackson v. Water Pollution Control Auth. of City of Bridgeport*, 278 Conn. 692, 705 (2006)).  Indeed, Connecticut courts "look to federal law for guidance on interpreting state employment discrimination law."  *Feliciano v. Autozone, Inc.*, No. 19200, 2015 WL 1312802, at *3 (Conn. Mar. 31, 2015).

In the employment discrimination context, federal courts have taken a broad view on who constitutes an "employer" under Title VII.  In fixating on the fact that Dieterle was not directly employed by Rite Aid CT, the Drug Store Defendants overlook two significant areas of liability that may be at work here.  First, federal courts in this Circuit have recognized the single employer doctrine.  The single employer doctrine allows a plaintiff to hold a party liable where there is "sufficient indicia of interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."  *Echevarria v. Insight Med., P.C.*, No. 13 Civ. 3710 (KPF), 2014 WL 7250956, at *13 (S.D.N.Y. Dec. 22, 2014).  "Single integrated enterprises can include parent and wholly-owned subsidiary corporations or separate corporations that operate under common ownership and management."  *Lima v. Addeco*, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009).  The critical question in this analysis is, "what entity made the final decision regarding

employment matters related to the person claiming discrimination."  *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007).

Second, courts in this Circuit have recognized a "joint employment" theory of liability.  This theory "assumes that there are separate legal entities, but that those entities handle certain aspects of their employer-employee relationship jointly."  *Dias v. Cmty. Action Project Inc.*, No. 07 Civ. 5163 (NGG) (RER), 2009 WL 595601, at *3 (E.D.N.Y. Mar. 6, 2009).  "Where this doctrine is operative, any employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violation of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."  *Arcuelo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).[1]

Here, Defendants acknowledge that both Maxi and Rite Aid CT are wholly-owned subsidiaries of Rite Aid Corp.  [*Id.* at ¶¶ 4, 7].  In addition, the Complaint directly concerns the substance and application of "company policy" on workplace harassment.  [Dkt. #1, Compl. at ¶¶ 12, 18].  Finally, and most significantly, Dieterle claims that he complained to James Paquin, a District Manager for Rite Aid, regarding the allegedly discriminatory conduct, and Paquin

---

[1] Courts have applied both of these theories to CFEPA discrimination claims.  *See, e.g., Tremalio v. Demand Shoes, LLC*, No 3:12-cv-00357 (VLB), 2013 WL 5445258, at *22 (D. Conn. Sept. 30, 2013) (discussing application of "single employer doctrine" to CFEPA gender discrimination claim); *Gaston v. Sun Servs., LLC*, No. 3:11-cv-1970 (JBA), 2014 WL 1256865, at *5-6 (D. Conn. Mar. 26, 2014) (applying joint-employer theory to parallel federal and CFEPA discrimination claims).

did nothing in response.  See [*id*. at ¶¶ 5, 23].  Given the reasonable possibility of overlapping policies and management between the two subsidiary entities, Dieterle has at least two working theories with which to pursue liability as to Rite Aid CT.  Thus, based on the allegations in the Complaint, "the Court cannot say that there is no possibility, that the Plaintiff cannot state a cause of action against [Rite Aid CT]."  *Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 684 (E.D.N.Y. 2012).

Indeed, *Ulysse* is instructive.  There, the court remanded a complaint alleging whistleblower retaliation, a claim the court characterized as "a garden variety employment case," against several related entities and individual defendants.  *Id*. at 679.  The court was faced with a very similar question as the one posed here, whether the individual defendants constituted "employers" under state law.  *Id*. at 683.  After reviewing the relevant state and federal law, the court liberally examined the complaint and found that, while the allegations were "general and at times in barebones language" they were sufficient to raise "enough of a basis upon which the Plaintiff can conceivably recover" against the individual defendants.  *Id*. at 684.  Also noteworthy is the court's observation that the "Defendants have not proffered any admissible evidence nor sworn pleading to support their position that: (1) generally, individuals cannot be proper defendants under [the relevant state law]; (2) the individual Defendants are not 'employers' . . . because they had no part in hiring, discharging or making any other personnel decisions . . . or (3) the individual Defendants had no part in the complaints or the allegedly retaliatory criticism alleged by the Plaintiff."  *Id*. at

9

685. Here, just like in *Ulysse*, the Drug Store Defendants' affidavit does not mention the CFEPA, and more importantly, it does not address the scope of an "employer" and address how Rite Aid CT could not be considered Dieterle's employer under it. While it does address the extent of control that Rite Aid CT had over the particular Maxi store at which the Plaintiff worked, it does not address the extent to which any Rite Aid CT policies or personnel, particularly those which concern hiring and terminating employees, overlap or govern employee conduct at Maxi. Instead, the Drug Store Defendants, like those in *Ulysse*, claim only that the complaint "does not allege that [Rite Aid CT] w[as an] 'employer[]' or contain sufficient allegations regarding [Rite Aid CT's] conduct to state a claim that [it] could be considered [Dieterle's] employer[]." *Id*. As the *Ulysse* court noted:

> The present determination is being made in the context of . . . remand, not on a motion to dismiss or summary judgment . . . . In order to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against the defendant . . . . Whether or not the Plaintiff has adequately alleged that [Rite Aid CT is an] 'employer' under the statute and thereby subject to liability is properly resolved on a motion to dismiss, not on . . . remand."

*Id*.

Accepting the facts pled in the Complaint as true, the Court finds that the Defendants have failed to meet their burden of establishing that there can be no recovery against Right Aid CT.

## CONCLUSION

For the foregoing reasons the Court concludes that it lacks subject-matter

jurisdiction and REMANDS this case back to the Connecticut Superior Court for further proceedings.  The clerk is directed to close this file.

                                    IT IS SO ORDERED.


                                  _____/s/_____
                                  Hon. Vanessa L. Bryant
                                  United States District Judge

**Dated at Hartford, Connecticut: March 31, 2015**